UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff. § | | |
| § | | |
| v. § | | CRIMINAL NO. 2:18-1061 |
| § | | |
| ANDREW GLEN DUGGINS, § | | |
| Defendant. § | | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Andrew Glen Duggins' Motion for Compassionate Release / Modification of Sentence (D.E. 61), to which the Government has responded (D.E. 71). For the reasons stated below, the motion is **DENIED**.

## I. BACKGROUND

In 2019, Defendant pled guilty to conspiracy to possess with intent to distribute more than 50 grams of methamphetamine and to being a felon in possession of a firearm. He has served approximately 38 months (25%) of his 151-month sentence and has a projected release date, after good time credit, of July 23, 2029. Defendant now moves the Court to modify his sentence as follows: (1) reduce his sentence to time served; (2) impose a term of supervised release equal to the balance of his sentence; (3) allow him to serve the next year in a residential reentry center, to be followed by three years' home confinement; and (4) order that he serve 1,000 hours of community service upon completion of home confinement. Defendant seeks compassionate release based on his COVID-19 concerns, his father's declining health, the fact that family members are caring for his minor children, and because he believes he was unfairly sentenced as a

1

drug kingpin. Defendant submitted administrative requests for compassionate release to the warden of FCC Coleman, but his requests were denied.

The Government opposes Defendant's motion because he is fully vaccinated against COVID-19 and has no documented health conditions that would pose an increased risk of severe illness or death from COVID-19. The Government further argues that none of Defendant's claims about his family circumstances or his policy arguments about drug sentencing present an "extraordinary and compelling circumstance" justifying release. Finally, the danger that Defendant presents to the community, the time remaining on his sentence, and other considerations under 18 U.S.C. § 3553(a) all counsel against compassionate release.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that*—
> > *(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with*

>                    *applicable policy statements issued by the Sentencing Commission*.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

"Neither the [U.S. Sentencing Commission's compassionate-release] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Although "not dispositive," the commentary to U.S.S.G. § 1B1.13 nonetheless "informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, 833 F. App'x 556 (5th Cir. 2020)).

The commentary identifies the following as "extraordinary and compelling reasons":

> **(A) Medical Condition of the Defendant.—**
>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.** –
>   The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process;

3

    and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

**(C) Family Circumstances.** –
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.** –
    As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the

4

nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, No. H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

## III. ANALYSIS

### A. COVID-19 Concerns

With respect to motions for compassionate release based on COVID-19:

> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

5

> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.
>
> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

Defendant is 35 years old. Despite his claim that he suffers from "a hereditary heart disease/defect," his medical records indicate that he is healthy and has no underlying medical condition that would make him particularly vulnerable to severe illness or death from COVID-19. Defendant is also fully vaccinated against COVID-19, having received doses of the Pfizer vaccine on May 5 and 26, 2021. While the vaccine is not 100% effective at preventing infection, it substantially reduces the risk of serious illness or death from COVID-19.[1]

---

1. According to recent data:

   > Updated topline results from analysis of 927 confirmed symptomatic cases of COVID-19 observed in their pivotal Phase 3 study through March 13, 2021, showing the Pfizer-BioNTech COVID-19 vaccine, BNT162b2, was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose. The vaccine was 100% effective against severe disease as defined by the U.S. Centers for Disease Control and Prevention (CDC), and 95.3% effective against severe COVID-19 as defined by the U.S. Food and Drug Administration (FDA).

   *Pfizer and BioNTech Confirm High Efficacy and No Serious Safety Concerns Through Up to Six Months Following Second Dose in Updated Topline Analysis of Landmark COVID-19 Vaccine Study*, Pfizer (Apr. 1, 2021) https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-confirm-high-efficacy-and-no-serious.

"Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, No. 18-CR-078, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021). Courts in this district have repeatedly denied compassionate release to inmates who have been vaccinated against COVID-19, "finding that 'vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection.'" *United States v. Rodriguez*, No. 2:18-454-5, 2021 WL 2635381, at *4 (S.D. Tex. June 25, 2021) (quoting *United States v. Beltran*, No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to inmate with underlying health conditions who had received first Pfizer vaccine dose), and citing *United States v. Schad*, No. 2:17-225-3, 2021 WL 1845548, at *3 (S.D. Tex. May 5, 2021) (denying compassionate release to 32-year-old inmate with aortic valve transplant and history of cerebrovascular disease who received both doses of Pfizer vaccine); *United States v. Fisch*, No. 11-cr-722, 2021 WL 1537274, at *1 (S.D. Tex. Apr. 19, 2021) (denying compassionate release to high-risk inmate who was offered and refused the Pfizer vaccine); *United States v. Wedding*, 2:19-CR-1693 (S.D. Tex. Apr. 8, 2021) (denying compassionate release to inmate who developed asymptomatic COVID-19 infection three weeks after receiving second Pfizer vaccine)). Because Defendant is "at little-to-no risk of severe COVID-19 [] after receiving his second Pfizer dose, there are no 'extraordinary and compelling reasons' justifying a compassionate release in this case." *See United States v. Groom*, No. 2:17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021)).[2]

---

2. Recent decisions across the country overwhelmingly agree that the risk posed by COVID-19 to a

**B. Family Circumstances**

Defendant further moves the Court for compassionate release because he is needed at home as the sole caregiver for his two minor children, whose mother is a substance abuser, and because his father is dying of HIV.

Defendant has offered no evidence that he is the only available caregiver for his minor children. To the contrary, his affidavit states that the children are currently being cared for by his parents and grandmother. D.E. 61-5, p. 5. His proposed release plan also lists three brothers and a sister-in-law who are "willing to help [Defendant] in any way possible as needed and whenever needed." *Id.*, p. 7.

As for Defendant's claims concerning his father, at least one court has held that a defendant's "role as the *only potential caregiver*" for an ailing parent "is an 'extraordinary and compelling reason' for compassionate release." *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019) (emphasis added). However, "[d]istrict courts in the Fifth Circuit have repeatedly declined to follow the *Bucci* decision where, as here, the

---

vaccinated inmate is not an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Burks*, No. 3:14-cr-208, 2021 WL 1394857, at *3-4 (W.D.N.C. Apr. 13, 2021); *United States v. Gomez-Vega*, No. 19-1382-001, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021); *United States v. Burks*, No.11-369(4), 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021); *United States v. Jones*, No. 14-154, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021); *United States v. Miller*, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021); *United States v. Stiver*, No. 17-64, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Decano*, No. 7-608, 2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021); *United States v. Williams*, No. 16-251, 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021); *United States v. Gabbard*, No. 18-20039, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021); *United States v. Kosic*, No. 18 Cr. 30, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021); *United States v. Stewart*, No. 17-488, 2021 WL 1011041, at *1 (D. Haw. Mar. 16, 2021); *United States v. Godoy-Machuca*, No. CR-16-01508-001, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021); *United States v. Williams*, No. 5:01-cr-00012, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Roper*, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021); *United States v. Cardoza*, No. 3:17-cr-438, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Poupart*, No. 3:11-cr-116, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021); *United States v. Johnson*, No. 3:02-cr-00068, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021); *United States v. Shepard*, No. 07-85, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v. Lipscomb*, No. 2:18-cr-34, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021); *United States v. Cortez*, No. CR-18-858, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Wakefield*, No. 1:19-cr-095, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021); *United States v. Grummer*, No. 08-CR-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Ballenger*, No. CR16-5535, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

defendant has failed to offer evidence that a family member is in fact incapacitated or that the defendant is the only available caretaker." *United States v. Rodriguez*, No. 2:15-217-1, 2021 WL 1978830, at *2 (S.D. Tex. May 17, 2021).

In *Burkett*, the court explained:

> [E]ven if the Court were to apply *Bucci*, Burkett's family circumstances are not similar. First, Burkett has not shown that he is the only available caretaker for his father. Second, Burkett has provided no documentation that would allow the Court to determine that his father's health conditions rise to the level of incapacity. Without more evidence besides an unverified motion, the Court will not use Burkett's claims as evidence favoring compassionate release.

*United States v. Burkett*, No. 3:17-CR-420, 2020 WL 5747872, at *2 (N.D. Tex. Sept. 25, 2020) (citing *United States v. Broadus*, No. 3:10-CR-183, 2020 WL 4784686, at *3 (N.D. Tex. Aug. 18, 2020)).

The *Nevers* Court similarly reasoned, "Unlike *Bucci*, in this case, there is no indication Petitioner is the only potential caregiver for her mother. Rather, the PSR indicates Petitioner has multiple other family members who are potential caregivers." *United States v. Nevers*, No. 16-88, 2019 WL 7281929, at *6 (E.D. La. Dec. 27, 2019); *see also Rodriguez*, 2021 WL 1978830, at *1 (denying compassionate release to care for aging mother and aunt where there was no evidence that either woman was incapacitated or required a caretaker, and the aunt's two grown sons were also potential caretakers); *United States v. Hudec*, No. 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("Here, Defendant acknowledges that his mother is currently caring for his father. Defendant also has two brothers who have written the Court in support of his release. Thus, unlike Bucci, Defendant is not the 'only available caregiver' for his father.").

Because Defendant has failed to show that he is the only available caregiver for either his minor children or his father, his family circumstances are not extraordinary and compelling.

### C. Kingpin Statutes

Defendant further argues that he "is a victim of the war on drugs statutes" and was unfairly sentenced as a "drug kingpin." As an initial matter, Defendant was not charged or sentenced under the Continuing Criminal Enterprise Statue, 21 U.S.C. § 848, also known as the Kingpin Statute. Moreover, his challenges to the supposed intent of Congress in passing drug laws with significant mandatory minimums, the use of drug quantities in sentence calculation, the wisdom of the Department of Justice's charging policies, and the use of the Sentencing Guidelines generally are not properly addressed in a motion for compassionate release. To the extent Defendant wishes to challenge the legality of such policies and statutes, he may file a motion under 28 U.S.C. § 2255.

### D. Rehabilitative Programming

Defendant emphasizes that he has participated in roughly 80 adult continuing education programs during the three years he has been in custody. These efforts at rehabilitation are commendable; however, while the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. U.S.S.G. § 1B1.10, app. n.1(B)(iii)).

### E. § 3553(a) Factors

Defendant was held responsible at sentencing for distributing between five and fifteen kilograms of methamphetamine and the possession of a firearm. The Presentence Investigation Report (PSR, D.E. 54) calculated his criminal history score at 25—more than twice the minimum to qualify for the highest criminal history category of VI. This history included scored convictions for possession of methamphetamine; criminal damage to property; possession of tools for the commission of a crime; theft (three convictions); criminal trespass; hindering law enforcement; burglary (two convictions); failure to identify as a fugitive; felon in possession of a firearm; and possession of contraband in prison. Defendant's state parole was revoked in three of these cases, and his probation was revoked in three other cases. At the time of sentencing in the current case, he faced pending charges in Texas for manufacture and delivery of a controlled substance and unauthorized use of a motor vehicle.

As detailed in the PSR, Defendant admitted that he sold guns to a supplier for delivery into Mexico and traded approximately 21 stolen vehicles for narcotics in a series of transactions involving a Mexican drug cartel. Sometime before his arrest in 2018, he became the District Captain of the Aryan Circle prison gang in the Corpus Christi area. Informants reported numerous violent acts committed by Defendant, including: hitting an individual in the head with a pistol, "beating the brains out" of an individual with a golf club, forcing an individual to her knees and holding a pistol in her mouth for more than an hour as he yelled at her, burning an individual's testicles with a hair straightener, and severely beating a bound individual. He also admitted to deliberately using a blowtorch to burn someone's leg after they came over to his residence without calling first.

According to Defendant's Individualized Needs Plan, he is a "high security, high recidivism risk level inmate." D.E. 61-4, p. 2. His Inmate Discipline Data sheet indicates that, while in custody for the current offense, he was found in possession of narcotics and sanctioned with a loss of 41 days' good time credit, impoundment of personal property for 120 days, limited visitation for one year, and disciplinary segregation for 15 days. D.E. 70, p. 2.

Having considered the factors set forth in § 3553(a), the Court finds that a 38-month sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. Defendant is a danger to the safety of the community, and releasing him after he has served only a quarter of his sentence would not deter criminal conduct or protect the public from his further crimes. Finally, given Defendant's history of violating the terms of both probation and parole, a sentence of home confinement or supervision would be inappropriate in this case.

## IV. Conclusion

For the foregoing reasons, the Court finds that extraordinary and compelling reasons do not warrant a sentence reduction and a reduction would be inconsistent with the applicable policy statements issued by the Sentencing Commission. Defendant's Motion for Compassionate Release / Modification of Sentence (D.E. 61) is therefore **DENIED**.

So **ORDERED** on 11/22/2021.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE